## Case No. 8,956.

### MAGNIAC et al. v. THOMPSON.

#### [Baldw. 344.] [1]

Circuit Court, E. D. Pennsylvania. April Term, 1831. [2]

STATUTE OF FRAUDS—DECLARATIONS OF DEBTOR—FUTURE MARRIAGE — SETTLEMENT — PRIOR DEBTS—EXTRAVAGANCE—RECORDATION.

1. To make a contract void under the 13th Eliz., for fraud against creditors, both parties must concur in the fraud. [2]

[Cited in Ashby v. Steere, Case No. 576.]

2. The declarations of the debtor are not evidence to defeat the title of the grantor, under a conveyance alleged to be fraudulent.

3. A contract or conveyance, in consideration of a future marriage, is within the sixth section of the statute of 13 Eliz., if bona fide and without notice of fraud, &c. [2]

[Cited in brief in Appeal of Madeira (Pa. Sup.) 4 Atl. 910.]

4. Marriage is a consideration as valuable as money, if bona fide, &c. [2]

5. If a marriage contract is executed, the wife is a purchaser, and the contract is valid though the husband was in debt at the time. [2]

6. If the contract is executory, she is a creditor till it is performed. If part executed, she is pro tanto a purchaser, and a creditor for the residue.

7. The husband has the same right to prefer his wife in completing a settlement pursuant to articles before marriage as he has to prefer any other creditor. [2]

8. Whether her position is as a purchaser or creditor, her rights are the same as purchasers for money, or creditors by bond. Her trustee is the purchaser or creditor at law, and she in equity.

9. If a contract before marriage could be enforced at law or in equity, the voluntary performance by the husband is as valid as if done under a judgment or decree, and is good against creditors who have no lien. [2]

10. The consideration of marriage being deemed valuable, a court of law will not estimate it in comparison with the settlement, equity may do it.

11. After the marriage, the marriage articles will not be presumed to have been abandoned by any delay or negligence of the trustee in their execution.

12. A covenant in the marriage articles by the father of the intended wife, to stand seised to

---

[1] [Reported by Hon. Henry Baldwin, Circuit Justice.]

[2] [Affirmed in 7 Pet. (32 U. S.) 348.]

her use, after marriage, of a piece of real estate, does not operate after marriage, to pass the legal estate by the statute of uses (27 Hen. VIII.), the use remains executory in the trustee and his heir at law.

13. Where by the marriage articles the husband was to erect a house and furnish it as he thought fit, an indiscreet expenditure for furniture is not, per se, fraudulent against creditors, unless it is so extravagant as at first blush to indicate a fraudulent motive, the creditors of the husband may take the excess.

14. Where the sum stipulated by articles before marriage has not been made up, the husband may do it afterwards on the eve of a judgment against him, if done in performance of the articles, or so accepted by the trustee.

15. Marriage articles are not affected by not being recorded within the time prescribed by the laws of New Jersey.[2]

This case was tried on a feigned issue made up by agreement of parties, for the purpose of ascertaining whether John R. Thompson, the defendant, had any means wherewith to pay a debt claimed by the plaintiffs, or means by the property in his marriage settlement, or otherwise, of satisfying a certain judgment in their favour against him. The agreement was made the 3d of June, 1830. On the 27th of November, 1827, the plaintiffs obtained a judgment in this court against the defendant for 22,191 dollars, an action of debt was brought upon it to April, 1829, in the circuit court of New Jersey, and judgment confessed the 1st of October, 1829 for 24,652 dollars, an alias capias ad satisfaciendum was issued on the judgment to April, 1830, on which the defendant was committed, of this judgment about 12,000 dollars remained due at the time of the agreement. The debt to the plaintiffs was contracted under the following circumstances. The defendant had resided some years at Canton, he left it in March, 1825 to return to the United States, leaving Mr. Rodney Fisher his agent, with full powers to transact business for him, having previously been introduced to the plaintiffs, merchants residing in Canton, by the defendant, as his agent. In November, 1825, Edward Thompson, the father of defendant, had two ships in Canton, for which he could not procure cargoes for the want of funds or credit, Mr. Fisher, as agent for defendant, made up an invoice of goods to the amount of 42,000 dollars, on which he took up from the plaintiffs 30,000 dollars on the 22d of November, 1825; on the 2d of December, 1825 he made up another invoice of 44,000 dollars, on which plaintiff advanced 33,000 dollars, the goods were pledged to the plaintiffs, and shipped on board of the vessels of Edward Thompson, the defendant had no interest in the transaction except his commissions. The goods arrived at this place, and were sold at a loss of 46,000 dollars on the invoice. The judgment of the plaintiffs was for the balance of their advances on the two invoices. The defendant returned to this place in June, 1825, shortly after which he

paid his addresses to Miss Stockton, in July an engagement of marriage took place between them, and between that and September proposals of a settlement on her were made by him, and before the agreement was put in writing, had begun to erect a house on the lot therein mentioned. On the 19th of December, 1825, articles of agreement and covenant were made between the defendant, Miss Stockton, and her father Richard Stockton, reciting the intended marriage, and the previous promise of Mr. Stockton to give his daughter a lot of four or five acres near Princeton, "on which lot the said J. R. Thompson has begun to build a house." It was then stipulated, that from and after the marriage, Mr. Stockton should stand seised of the lot and all buildings to be erected thereon, in trust, to permit the parties during their joint lives to reside thereon if they think proper, if not, then the rents to be paid to his daughter during their joint lives. If Thompson should survive her and have issue, he to occupy the lot and house, or to receive the rents for the maintenance and support of himself and family; after his death, in trust for the children of the marriage as tenants in common, if there should be no children then, on the death of either party, in trust for the survivor. Thompson stipulated that if the marriage took effect, and in consideration thereof, he would, with convenient speed, build and furnish said house in a suitable manner as he shall judge fit and proper, which, with all erections, improvements, furniture and additions shall be subject to said trusts, so far as they are applicable to each species of property, and will, in one year after the marriage, place out on good security 40,000 dollars, and hand over and assign the evidences thereof to Mr. Stockton, who shall hold the same in trust; to receive the interest for her use during their joint lives, and her receipt to be good; if she dies leaving issue, to pay the same to Thompson for his and their support without account, and after his death to the children in equal parts; if she survives and has issue, then on the same trusts for her; if either dies without issue, then in trust for the survivor. Thompson had permission to act as the agent, and to change the securities from time to time. It was mutually agreed that the trustee should not be held guilty of a breach of trust for not acting, unless expressly requested to do so by one of the parties, and not to be held answerable as trustee, unless for acts of wilful neglect or misconduct. Vide [Magniac v. Thompson] 7 Pet. [32 U. S.] 349. The marriage took place the 28th of December, 1825. Thompson proceeded to finish the house, which cost about 13,000 dollars, and furnished it, which cost about 5000 dollars, but made no investments on security, or other provision for the 40,000 dollars, during the life of Mr. Stockton, who appears to have taken no measures to compel the completion of the settle-

2 [Affirmed in 7 Pet. (32 U. S.) 348.]

ment. After his death, Thompson, on the 29th of September, 1829, indorsed to Captain Stockton, as trustee for Mrs. Thompson, on account of the 40,000 dollars, one note for 5000 dollars, which was good, and another of one Morris for 4500 dollars, which was considered doubtful, nothing more was paid on that account. The agreement was proved the 5th of April, 1830, and recorded the 22d of May, 1830. It appears that on his return from Canton, Mr. Thompson was worth about 90,000 dollars, and owed but a small amount of debts; he was under heavy responsibilities for his father, by whom he lost a very large sum. From the statements produced and verified at the trial, the amount of what Mr. Thompson was worth in 1825, was accounted for, and no proof was given that he had concealed, secreted, or kept any thing for his own use, he appeared to be in possession of no property, real or personal, or to have any control over any. The cause turned on the validity and effect of the marriage contract, the conduct of the parties to it, and the mode of its execution. The insolvency of Edward Thompson was publicly known on the 19th of November, 1825. On the 19th of December, 1825, previous to the drawing up of the articles, Thompson made a written statement directed to Mr. Stockton, in substance as follows: "I have no personal debts except to a small amount in common course of business and living. I am surety for my father to S. & L. in a respondentia bond for 200,000 dollars, if the goods sell reasonably well there can be no loss, the freight premiums on dollars and commissions tend to enhance the security, &c., there can therefore be no demand on me. On no fair principle can the loss be more than 20,000 dollars and I consider myself worth that amount, if not more, in addition to the sum proposed to be settled." Signed "J. R. T., December 19th, 1825." Indorsed: "Statement made to the trustee by J. R. T. as the basis of the settlement, and upon which it was made. R. Stockton." Id. 353.

Joseph R. Ingersoll, for plaintiff.

The plaintiff is a meritorious creditor, as to whom the marriage settlement is void for fraud, on account of its having been concealed till after the judgment in New Jersey, and not having been carried into effect substantially. Any conveyance or gift after marriage is void per se, if the husband was indebted at the time (3 Johns. Ch. 492); as to subsequent debts the presumption is in favour of the settlement, (Id. 502); subsequent creditors may avoid it by showing debts existing before, due to other creditors (12 Serg. & R. 448). An ante-nuptial settlement may be good if it is fair, and the bulk of the husband's property is subject to his debts, his mere indebtedness will not invalidate it, and if there is no fraud (1 Rop. Prop. 298), it will be enforced in equity, so far as it is consistent with the policy and principles of law (2 Kent, Comm. 144), provided it be reasonable and not extravagant (Reeve, Dom. Rel. 176). A man in debt may make a valid sale of his property, if it is fair and for good and adequate consideration bona fide and not to withdraw it from his creditors. So he may settle it before marriage, but if the settlement is disproportionate to his means, it is suspicious, and may be held fraudulent as to creditors. 12 Serg. & R. 456; [Sexton v. Wheaton] 8 Wheat. [21 U. S.] 238; 2 Kent, Comm. 146. At the time of this settlement Thompson was in fact worth nothing, the failure of his father was known, and he then estimated his loss at 20,000 dollars, leaving himself worth 60,000 dollars, the settlement required 58,000 dollars, which presents strong ground of suspicion of a design to defraud his creditors. Vide 17 Ves. 263; 1 Rop. Prop. 296, 298. Thompson was to have the control of the fund, to appear as the owner with a power of substituting and changing the investment, equivalent to a power of revocation, which is a strong badge of fraud. He had begun to erect the house before the articles were executed, and with the permission of Mr. Stockton, which would give the creditors a right to take it as Thompson's, on the same principle that permitting a party to make improvements, shall prevent the owner from disturbing him in their enjoyment (2 Atk. 83; 1 Eq. Cas. Abr. 326, pl. 10; 2 Eq. Cas. Abr. 532, pl. 3), or the acceptance of rent which binds the party to confirm a lease (3 Atk. 692). The settlement was never acknowledged, it was proved but not recorded till two days before the capias ad satisfaciendum issued against Thompson; on this account it was void by the laws of New Jersey, which declares all deeds and conveyances to be void as against subsequent judgment creditors unless acknowledged and recorded in fifteen days after their execution. R. L. N. J. 747. As the contract was not a gift, it operated as a deed to Thompson as a purchaser of the lot, investing him with the title so as to make it liable to his creditors if the contract was not recorded so as to give notice of the trust. This principle is settled in 1 Desaus. Eq. 401, 2 Desaus. Eq. 254, in which cases, the debt was contracted after the settlement was recorded, yet having been recorded after the time required by law, the property settled was held to be subject to the debt. In this case the settlement seems to have been abandoned, it remained pocketed till Thompson was arrested on a capias ad satisfaciendum, he remained in possession of the house as apparent owner, no application was made to him to make any investment of the 40,000 dollars or any part, and he did not offer to make any till the 29th of September, 1829, the day before the judgment, when he delivered over the two notes which he had till then retained. The contract, though in form calling for a settlement, has never been treated by the parties as having any substantial efficacy as between the parties, and

their conduct has precluded them from now setting it up against the plaintiffs. Every thing that has been done towards its execution has been since the marriage and the pressure of the plaintiffs' debt; so that in effect and substance it is a post-nuptial contract, which is not good if the consideration does not have a reasonable proportion to the settlement. 2 Kent, Comm. 145, 146. It is under these circumstances a voluntary settlement after marriage, which is void against previous creditors. Ridgeway v. Underwood [Case No. 11,815]. To complete it, required more than Thompson was worth at the time; his father's insolvency was well known, and it was as well known that the settlement could not be completed but at the expense and with the funds of his creditors. A party claiming under such an agreement, which necessarily withdraws property of a debtor from his creditors, ought to be held to all the forms and rules of law in carrying it into execution; it was to have been completed in one year from the marriage, but was abandoned, when Thompson's affairs were wound up and found desperate. The parties could not revive it in 1829, if the delivery of the notes was intended to apply to it. it was, however, as a mere colour, for the agreement was not recorded till seven months afterwards. Though ante-nuptial contracts are highly favoured in courts of law and equity, they ought not to be so at the expense of creditors, especially when. as in this case, it was evident that it could not be completed by Thompson's own means. It must have been ascertained before the house was finished and furnished, that the 40,000 dollars could not be invested for the purposes of the trust; the expenditure of 18,000 dollars for the establishment, without any income to support it, was incompatible with the situation of Thompson, it was extravagant. and indicated an intention not consistent with good faith towards creditors. As Thompson was by the agreement to have the use of the house and furniture, the expenditure of 5000 dollars on the latter was, per se. a fraud on creditors; an insolvent man will not be permitted to apply the money of his creditors for the purposes of useless ostentation, or to gratify the pride of his family.

Joseph P. Norris and Mr. Binney, for defendant.

The burthen of proving fraud is on the plaintiffs. If there was any fraud, the parties interested in this suit are not implicated in it, the settlement was agreed on when Mr. Thompson believed he was worth 90,000 dollars, there has been no concealment of property, or any conduct of his which indicates any actual or intended fraud at that time, but the contrary appears by a reference to the facts honestly believed at that time to exist. The settlement is not contrary to law, it was a covenant to stand seised to uses, which is completely binding on its execution without recording [Carver v. Jackson] 4 Pet. [29 U. S.] 82; and not a conveyance at common law. The time of investing the portion was not of the essence of the contract, it was good whenever made to carry the contract into effect. An ante-nuptial contract is good against husband and creditors (1 Rop. Prop. 297); where the consideration of marriage intervenes, the obligation is perfect and binding (2 Rop. Prop. 33; 17 Ves. 262); though the party is in debt, it is good against creditors, if there is no legal or actual fraud, and made as a bona fide performance of a moral obligation, its specific performance will be decreed in equity (3 Johns. Ch. 494, and cases cited; 2 Kent, Comm. 145; 3 Johns. Ch. 554; 2 Desaus. Eq. 264); who will go further to protect the wife than the husband (2 P. Wms. 700); it will not be avoided by a subsequent act of bankruptcy (Ath. Mar. Sett. 373; 1 Atk. 158, 189; 2 Atk. 445; Cro. Jac. 158); nor will fraud be presumed without manifest proof (2 Com. Dig. [Day's Ed.] 616; 2 Ch. Cas. 85, 114). The title was in Mr. Stockton, who was not bound to convey, but was to hold the property for the purposes of the marriage, on a trust not executed by the statute of uses, but which remained executory from its nature. 1 Vent. 194. If the settlement was not good, the title to the lot did not revert to Thompson, it was good between the parties, the plaintiffs might have levied on it, as well as on the house and furniture under the judgment in New Jersey, or might have proceeded in chancery. In the latter case, the defendant would have had the benefit of his oath, in this suit he cannot be heard, and therefore the plaintiff ought to be held to clear proof of fraud in fact. From the terms of the marriage articles, taken with reference to the then situation of Mr. Thompson, no fraud is imputable in law, he had no knowledge of debts contracted in Canton only a month before; he was not about embarking in any hazardous speculation, as in the case of Thomson v. Dougherty, 12 Serg. & R. 448, &c., but was about to retire from business on a competency, his responsibility on the inchoate agreement for a settlement, and the engagement of marriage attached three months before his agent contracted a debt to plaintiffs. The bona fides of that contract cannot be questioned, for though he had means then in his hands, he did not apply them to the investment of the 40,000 dollars, but suffered them to go to his father's debts. That there was a verbal contract previous to the written one, is evident from his having begun the erection of a house before it was signed. While Mr. Stockton had no security for the 40,000 dollars, the plaintiff had on an advance of 63,000 dollars a pledge of invoices amounting to 86,000, and of the money advanced to Mr. Fisher, Thompson received nothing. Under such circumstances there is no legal presumption or evidence of fraud intended by him, still less by Mr. and Miss Stockton; it

is indeed a singular imputation of a design to defraud creditors, when none of the parties had a knowledge that there were creditors. When Thompson promised to make the settlement, in the summer of 1825, he was not in debt, such promises were binding before the statute of frauds, though not in writing, and equity would have decreed a specific performance, such agreements are always made before they are reduced to writing, the good faith of which is shown by giving time to complete the settlement. Vide [Sexton v. Wheaton] 8 Wheat. [21 U. S.] 238, &c. Marriage is a consideration higher than any other known to the law. 2 Eq. Cas. Abr. 585. It cannot be measured, nothing in exchange for it is excessive or extravagant (unless so gross as to be evidence of fraud), because it cannot be restored or compensation made. The man becomes a debtor to the trustee of his intended wife and to her, either of whom may apply to equity to enforce the contract, without any reference to the proportion between the wife's portion and the sum to be settled. This may be necessary in post-nuptial contracts, but though the wife is to bring no portion, an ante-nuptial contract is good, per se, against purchasers and creditors, or if made after marriage, in pursuance of an agreement before, whether the purchaser had notice or not, unless he has the legal estate (Ath. Mar. Sett. 125, 128, 149, 151; 1 P. Wms. 277), or the creditor had a lien. Where a father held land on a secret trust, and conveyed it to his daughter on her marriage, the husband, having no notice of the trust before marriage, held it discharged therefrom (2 Rolle, 105); marriage is a purchase of the most favoured kind (1 Vent. 194; 1 Ch. Cas. 99); not on account of the wife's portion, but the marriage (1 Atk. 158, 190); contracts in consideration of marriage are equally protected (2 Ves. Sr. 304, 308; Amb. 121; 5 Ves. 878); no instance is known where a settlement in consideration of marriage has been set aside, unless the intended wife was a party to the fraud (2 Dick. 504, 506; 17 Ves. 263, 268); marriage is a sufficient consideration on which to set aside a former voluntary settlement, or deed (Cowp. 712; 6 Ves. 752). Claims of creditors, unless by judgment, are no objection to the execution of a marriage contract or articles, for though voluntary in their creation, they are the inducement to the marriage, and good against antecedent creditors, unless the wife knew that bounty to her was a fraud on them. Finch, Prec. 377, 402, 405, and cases cited. Wherever the husband can make a valid sale, he can make a valid settlement without any money consideration (1 Swanst. 319), and where the contract is executory, she is the most favoured creditor, and will be preferred unless she has done something to postpone herself. No act of the trustee in neglecting to have the settlement completed could affect her, as equity would protect her rights; if the trustee should abandon or surrender the fund agreed to be settled, equity would make the person who held it a trustee for the wife, or if she should consent to it, equity would protect it for the issue of the marriage, who are deemed parties to the contract as purchasers under it. In this case there could be no abandonment by the husband, the trustee or the wife, there was no necessity of recording the articles because no one could purchase without notice, while Thompson and wife were in possession, which is notice of title. If the omission to record had any effect, it was not to vest the property in Thompson, so as to make it liable to his debts, but to expose it to the creditors of Mr. Stockton, who held the legal title. Thompson was not made the agent to manage the fund by the agreement, he could act as such only by the permission and under the control of the trustee. In marriage settlements, the possession of the property settled must be joint, if consistent with their terms, such possession is no badge of fraud. He was a debtor under the marriage contract, and had a right to make payment in any manner agreed upon to comply with it; the house was to be suitably furnished, so as he might deem fit, the want of an inventory did not make it fraudulent (Ath. Mar. Sett. 173; 6 East, 281; 17 Ves. 272); the articles were executory, the use never was executed; they are considered as instructions by which to draw the formal settlement, and may be executed cy pres (Ath. Mar. Sett. 92, 106). On a covenant to stand seised to the uses of a marriage, they are executory till the uses are well raised by a deed. The amount expended on furniture does not affect the contract on the ground of fraud, if it is extravagant, the surplus is liable to execution by creditors. As the contract remained executory till the settlement was executed, Thompson might make the investments at any time on account of the 40,000 dollars in payment of the debt he had contracted, his transfer of the securities in 1829, was in part execution of the contract, which was no fraud on creditors, because he had a right to pay the debt due on the marriage contract in preference to the debt to the plaintiff. There is no evidence that these securities were transferred collusively or colourably, with any fraudulent purpose.

C. J. Ingersoll, for plaintiffs.

The defendant stands in the position of an applicant for the benefit of the insolvent laws, who must be able to take the oath required by the act of congress. 1 Story's Laws, 715 [2 Stat. 4]. From the nature of the issue in this case, he is bound to prove affirmatively that he has no property, by accounting for all the property which has been traced to his hands, which he has not done, and he cannot honestly take the oath prescribed by that law. He stands here on a presumption of fraud which he must rebut, the plaintiffs

complain of fraud by the concealment and abstraction of property which they may prove by circumstances or negatives pregnant. It is admitted that Thompson has applied 27,-500 dollars to the marriage contract, of which he has the use, which is equal to an income to the amount of the interest of that sum; the meaning and effect of the settlement, so far as executed is, that his property has been given to his wife's trustee to keep for him, and prevent the plaintiffs from recovering their debt, under cover of the agreement which had been abandoned. Admitting marriage to be a consideration however high, the contract may be impeached for fraud on a prior creditor, as the plaintiff was in this case, and the adequacy of the settlement will be inquired into; in the case cited from 1 P. Wms. 277, the judgment was after the articles, and the chancellor said that the consideration paid must be somewhat adequate to the thing purchased, or a judgment between the articles and the deed would be let in. Id. 282, 283. A purchase by marriage is in all respects on the same footing as for money, so is a creditor by marriage articles; marriage is but a civil contract between the parties, and where third persons are concerned, is examined and construed like other contracts, and will not be suffered to be available to withdraw a debtor's property from the reach of his creditors, or to defeat a trust under which he holds the property of others. The case cited from 2 Rolle, 105, was not finally decided; it was adjourned (Id. 116); in the case from 1 Vent. 194, and 1 Ch. Cas. 99, no question concerning creditors arose, the conveyances in consideration of marriage were held not to be voluntary and so fraudulent; the case in 1 Ves. Sr. 304, goes no further than to put a settlement after marriage, in consideration of a portion paid, on the same footing as if made before; so of the cases referred to by Ath. Mar. Sett. 28, 31, 39, 81, 160, 301; but the case in 6 East, 257, 280, shows that the consideration of a postnuptial settlement will be compared with the sum paid by the wife, and if the latter was inadequate, would be set aside on account of abstracting the husband's property from his creditors, and a new trial was directed for the purpose of ascertaining the state of the husband's debts. Id. 282, 283. The law is settled in this state, that though a deed is for a good and valuable consideration between the parties, it is fraudulent in law against existing creditors. 1 Rawle, 353. The law respecting marriage settlements is the same here as in England; yet where a husband entered into articles with trustees to secure to his wife a legacy left her by her grandmother, which he received, but did not execute a mortgage till he was insolvent, and soon after declared a bankrupt; the mortgage was held void, though the husband was solvent when he made the articles. Rundle v. Murgatroyd, 4 Dall. [4 U. S.] 304. Indebtedness at the time is the true criterion of legal fraud, where the settlement is voluntary or for an inadequate

consideration [Sexton v. Wheaton] 8 Wheat. [21 U. S.] 242; and the cases referred to are full to the point, that no settlement on a family is good against previous creditors. [Hinde v. Longworth], 11 Wheat. [24 U. S.] 213, 214. The supreme court lay down the law to be, that valuable must also be an adequate consideration. Sexton v. Wheaton, 4 Wheat. [17 U. S.] 507. In this case the inadequacy is apparent, the completion of the settlement would require more than Thompson was worth, according to his own statement previous to the articles; he said he was worth 20,000 dollars more than the sum to be settled, if his losses did not exceed 20,000 dollars. Now the sum to be settled was 40,000 dollars, the house cost 13,000 dollars, the furniture 5,000 dollars, absorbing his whole surplus excepting 2,000 dollars, according to the statement which was the basis of the settlement; besides, there was notice of Thompson being surety for an insolvent to the amount of 200,-000, this was clear proof that it was intended to settle his whole estate, and as the fact turned out, the settlement, as partially made, has absorbed his whole property. This taints the contract strongly with actual fraud, but as a badge of fraud in law, it is inherent in the contract itself as matter of law; the fact that a debtor conveys or settles his whole estate, makes it fraudulent, per se, against creditors; so are all the authorities in law and equity, from Twyne's Case, 3 Coke, 80, to Cathcart v. Robinson, 5 Pet. [30 U. S.] 281, however valuable the consideration may be if the purchaser knows of the existence of the debt. It was not material whether Richard Stockton was a party to the fraud, all the parties knew of the failure of Edward Thompson before the contract, and the consequent insolvency of defendant; yet by the terms of this agreement, he was at liberty to build such a house and to furnish it as he pleased, to be the agent of the trustee, with uncontrolled power to change the securities at his pleasure, which are all strong badges of fraud. The legal effect of the covenant of Richard Stockton, to stand seised to the uses of the agreement, was a conveyance of the house, lot and furniture to Thompson and wife, as a use executed on the marriage by the statute of uses. 27 Hen. VIII.; 2 Ruff. 227. The extravagant expenditure for furniture is, in itself, a fraud on creditors, it was not suited to Thompson's condition, and was made after his known insolvency and inability to complete the settlement. The marriage contract was a mere cover under which to conceal the property of Thompson, the first attempt to make any provision for an investment was the delivery of the securities to Captain Stockton, on the day before the confession of the judgment in New Jersey, which was a fraud, per se, on the plaintiffs. There was no delivery of the agreement, which never took effect in law, no act of the parties to give it notoriety; it was a secret conveyance, and void (Twyne's Case, 3 Coke, 81); there was no recognition

of its existence as a binding contract in the lifetime of the original trustee, and no act of the parties by which the public could judge of their true situation. I am aware that courts in England have gone great lengths in supporting marriage settlements, they have indeed adopted principles which protect concubines as well as wives against creditors; but they have grown out of the corruption of mànners there, and have not been sanctioned here. The rules which protect creditors against the fraudulent acts of their debtors, have been broken down, and men in debt have been permitted to provide for their families by nuptial contracts, made under circumstances which would invalidate a conveyance for any other consideration. But these decisions are not founded on the principles of the common law, and the affirmative statutes of 13 & 27 Eliz., as adopted in this country, which repudiate a contract like the present, and treated as it has been by the parties, as fraudulent in fact and by the policy of the law.

BALDWIN, Circuit Justice (charging jury). The real parties to this suit are the plaintiffs and Mrs. Thompson, and the real question between them is, whether the marriage contract was valid, if it was, then Mr. Thompson had a right to apply his property towards its fulfilment, and it is lawfully held by the trustees of Mrs. Thompson. If the contract is not valid, then Mr. Thompson is in law deemed to be the legal owner in trust for his creditors, not because the marriage contract is not binding on him, but because his indebtedness at the time put it out of his power to divest himself of property to the injury of his creditors. It appears that the plaintiffs are the only creditors of Mr. Thompson, the existence of the debt is proved by Mr. Fisher, and the judgments confessed by Thompson, which are conclusive against him as to its existence and amount; they are also legal evidence to affect the settlement by showing the indebtedness of Mr. Thompson at the time. Hinde v. Longworth, 11 Wheat. [24 U. S.] 210. No evidence has been offered to impeach the fairness of the debt, and you will take it as proved. The case must turn on the validity of the marriage contract, which is good as between the parties and as to all the world, unless it is liable to impeachment for fraud in fact or fraud in law. As to creditors, fraud in fact, or actual fraud, consists in an intention to injure, defraud, delay or prevent them from recovering their just debts, by any contract, gift, deed, settlement or agreement, withdrawing or attempting to withdraw the property of a debtor from the reach of his creditors. The English statute of 13 Eliz. c. 5, declares all such acts null and void as to creditors, this statute is in affirmance of the common law, is in force in this state and New Jersey, and you will consider it as binding as a law of the state. Proof of fraud need not be express, it may be in-

ferred from circumstances, but ought not to be presumed without either, a jury ought to be satisfied from facts that there was a dishonest intention, and not to infer fraud merely because they have doubts of the fairness of the transaction. From the conduct and situation of the parties, and the effects intended to be produced by the act, something should be made to appear inconsistent with integrity, so as to admit no reasonable interpretation but meditated fraud. [Conard v. Nicoll] 4 Pet. [29 U. S.] 295, 297. Both parties to the alleged act of fraud must concur in the illegal design, the debtor may lawfully sell his property, or prefer one creditor to another, with the direct intention of defrauding other creditors, but unless the purchaser or preferred creditor receives the property with the same fraudulent design, the contract is valid [Sexton v. Wheaton] 8 Wheat. [21 U. S.] 238, &c., against other creditors or purchasers who may be injured by the transaction. The admissions or declarations of the debtor, as to the object intended to be effected, are evidence to contradict his answer to a bill brought to annul the act as fraudulent, but not to affect the parties claiming under it, or to have a bearing on the whole case [Venable v. Bank of U. S.] 2 Pet. [27 U. S.] 119, 120; 2 Hals [7 N. J. Law] 173, 174; you must therefore have evidence to affect Mrs. Thompson and her trustee Mr. Richard Stockton with fraud, in participating and concurring in the fraudulent intention, before you can pronounce this marriage contract void for actual fraud.

The facts of this case, which are not complicated, are for your consideration, they seem more satisfactory than are usual in such cases, and we think proper to say, that in our opinion an inference of intention as fraud, would be a very severe comment on the conduct of the parties; it is however for you to decide, and if you think there was intentional fraud in both parties, you will find for plaintiffs. You are to decide another matter of fact, whether Mr. Thompson has concealed or has in his possession any part of the property he owned in 1825, other than what has been invested in the house and furniture and the securities in the hands of Captain Stockton, in doing which, you will discriminate between the deliberate design to defraud by secreting property for his own use, and losses incurred by casualties and want of prudence or discretion. This question depends on what he has in his actual possession or control, not what he ought to have had, what he has disposed of for any other use than his own, or what has been applied to the marriage contract, which is a subject of distinct consideration. The next and most important question is, whether the marriage contract is fraudulent in law, and for that reason void as against the plaintiff, that is, though the intention of the parties was honest, the policy of the law forbids the execution of the contract, and takes from it all legal efficacy as to the creditors of Thompson. By the sixth section of

the statute of 13 Eliz., it is provided, that it shall not extend to any interest in land or goods and chattels, made on good consideration, bona fide, lawfully conveyed or assured to any person, not having at the time of such conveyance or assurance to them made, any manner of notice or knowledge of such fraud, covin or collusion. The words of the law require that both parties must concur in the fraud, so it has been held for two hundred and sixty years. There are in law two kinds of consideration, "good," which is natural love and affection, and "valuable," which is money or marriage; the word "good" in the sixth section has always been held both in courts of law and equity to mean a valuable consideration.

Hence the law has been expounded to embrace three kinds of conveyances: (1) Those made with a fraudulent intent in both parties, which are declared void as well by the enacting part of the law as by the exemption from the saving in the sixth section, without regard to the consideration. (2) Voluntary conveyances made for good consideration, without fraud in fact, but as they tend to defraud creditors if they vest the property, the policy of the law makes them void for legal fraud, which it imputes to them on account of their tendency, which is deemed equivalent to actual fraud. (3) Conveyances for valuable consideration, bona fide, without notice of any fraud or covin by the person receiving the conveyance, which are excepted out of the statute, are valid at common law to pass the property conveyed, and entitle the purchasers to the protection of all courts. If you should find that this contract does not come within the first class, it cannot come within the second, for if made in contemplation of marriage, the intended wife is on the footing of a creditor or a purchaser for money, and not of a voluntary grantee for the mere consideration of love and affection, or as a volunteer. There is a marked difference between a provision for a wife and children before and after marriage, where there is no portion or money paid as the consideration; in the first, the consideration is as valuable as the debt due a creditor, or the money paid by a purchaser, in the latter it is merely voluntary. There is indeed a moral obligation to provide for the support and comfort of a family, but it must yield to the higher legal obligation towards those who have claims on the property of their debtors. As between creditors and volunteers a man must be just before he is generous. But where conflicting claims arise between creditor and creditor, purchaser and purchaser, or purchaser and creditor, the first inquiry is, whether the party claiming the debt or the property purchased has such a right as is recognized by a court of law; the next is whether such right has been acquired under such circumstances as will annul or modify it in a court of chancery

by the established principles of equity. As between debtor and creditor the latter has a right to as much of the debtor's property as will pay his debt, but the debtor may prefer one creditor to another, or give all his property to one, and it is neither fraud in fact or law without covin or collusion. He may make a sale of his whole estate, turn it into money, and distribute it at pleasure among his creditors, and the bona fide purchaser will hold it against all creditors who have not previous liens. [Sexton v. Wheaton] 8 Wheat. [21 U. S.] 242; [Hinde v. Longworth] 11 Wheat. [24 U. S.] 213, 214. These principles cannot be shaken.

A contract in consideration of a future marriage creates a legal and equitable obligation to perform it in good faith; if the contract is executed, the parties become purchasers, if it remains executory till after marriage, they become creditors after its consummation, or assume pro tanto the character and rights of both, if executed only in part, entitled to the protection of all courts in enjoying what is granted, and their aid in enforcing performance of what remains to be done. And if either party voluntarily perform what a court would compel to be done, it would be as valid as if done by its judgment or decree, or as if the execution had been completed on the date of the contract. The law is express in referring to the time of the conveyance and assurance, and embraces not only perfect grants and gifts but "any estate or interest in lands, goods and chattels, made, conveyed or assured." On these principles it is the opinion of the court that the evidence brings the marriage contract within the sixth section of the statute, unless you shall find it not made in good faith, or with notice of fraud in Thompson brought home to his intended wife, and that Thompson actually entered into it with a fraudulent, covinous or collusive intention. If you do not so find it, then Mr. Richard Stockton is considered, at law, a bona fide purchaser for a valuable consideration, without notice so far as the contract has been executed by Thompson, and his creditor for what is executory. Mrs. Thompson has the same character in equity, and Captain Stockton is now standing in all respects in the situation of his father. The case then is a contest between Captain Stockton, the legal, and Mrs. Thompson the equitable purchaser of the house, furniture and securities, by the contract and the marriage, of the lot as her marriage portion, and the plaintiff the sole creditor of Mr. Thompson. Thus they stood at the commencement of the suit, and as creditors at the time of the contract and confirmation of the marriage, Mr. Stockton and Mrs. Thompson having performed their stipulations had a perfect right to call on Thompson at law and in equity to perform his. As a purchaser Mrs. Thompson is one of the most favoured class, the consideration she has given is as valuable as money,

it need not be considered as more so; as a money purchaser of property, a conveyance before marriage by her intended husband would be as valid though he was in debt as if he was not. If he held the legal title the interest would vest by his deed, though he held it in trust for others, as fully and completely as if Thompson had a right as perfect in equity as at law, provided she had no notice of the trust. This is an universal rule, a principle never questioned, and protects all bona fide purchasers for valuable consideration without notice before the money paid or the condition of the grant performed; it applies to Mrs. Thompson not as a privileged purchaser, but as a purchaser from one who has the legal title, subject to an unknown trust for the use of a third person. Placing the plaintiff in the situation of a cestui que trust, and he cannot be placed in a better one, it is a strong one against him; the debt to him was contracted but a few days before the date of the marriage articles, and in a part of the world so remote as to exclude the possibility of notice to any of the parties, which differs this from the common cases of a trustee conveying the legal estate to the injury of cestui que trust, where the trust is necessarily known to the trustee, and he is guilty of direct fraud. Hard as the application of this principle may be, it is not relaxed even in favour of the widow or orphan who has been defrauded by their trustee selling what is not his own; a loss must fall on one of two innocent sufferers whose claims may be supposed equal in justice and equity, in such case the law leaves the property with the one, who has acquired the legal title by fair purchase, in good faith and without notice. A creditor of a fraudulent debtor who settles on his intended wife property which he is bound to apply to the payment of his debts, is entitled to no more favour, than any other person whose property is unjustly conveyed by his trustee to pay his own debts, to rob one family to save another, or secure a provision for an expected one of his own. The creditor can be no where more favoured than the infant, the ward, the widow, or the orphan, whose property is held in trust without lien or security, and subject to a sale by the trustee. The creditors of a deceased debtor have the same rights as those of a living one, yet if the executor sells the personal property to pay his own debt, a purchaser without notice or collusion will hold it even in equity. This is as much a violation of moral honesty and breach of faith, as to settle it on an intended wife, to whom he was under as high an obligation to pay the consideration of the marriage contract, as a bond given for money lent, or property purchased. Vide [Vattier v. Hinde] 7 Pet. [32 U. S.] 268.

The consideration of this contract is both marriage and property, the value of the first cannot be, and of the last has not been ascertained in dollars; but at law, the mere inadequacy of consideration is no ground for declaring a conveyance of real or personal property void, if there is any consideration, the conveyance is valid at law; the amount cannot be inquired into as respects the grantor, his creditors or subsequent purchasers, in the absence of actual and legal fraud in the grantor or notice of it to the grantee. The only resort of parties who complain of equitable fraud, or other circumstances which would invalidate it in equity, is to those courts; they only can decide upon the adequacy of a pecuniary fund, or the equality of marriage to a given sum of money or value of property, under the circumstances of the case. Cases may exist where equity would compare and estimate them for the relief of a creditor, a purchaser, or perhaps the party, in a strong and clear case of injustice; but we know of no instance where it has set aside a purchase for valuable consideration on a marriage contract, when made bona fide and without notice of fraud or defect of title. Those claiming under them have ever been the peculiar favourites of courts of equity, and their rights can never be disturbed unless in extreme cases, none have yet arisen, when they do arise they will be exceptions to a rule which is as yet without any, and growing out of the necessity of the case.

In the present case we perceive nothing which gives it any unusual features. From the evidence it appears, that at the time of the contract of marriage, Mr. Thompson was abundantly able to make the stipulated settlement and pay all his debts. His inability has been accounted for by heavy and unexpected losses on investments made by his agent in good faith; without any ground for the imputation of dishonesty or imprudence in Thompson, his situation is such, that his wife must lose 30,000 dollars of her settlement, or his only creditor lose 12,000 dollars of his debt. Admitting their equities to be equal, she has a legal advantage which no court can take from her; unless her conduct can be impeached for fraud, actual or legal, it would be as unjust as illegal and inequitable, to visit alone on her the consequences of her husband's misfortunes.

Considering Mrs. Thompson therefore as a purchaser under the marriage articles, we are decidedly of opinion, that there is no legal fraud attending the transaction which would invalidate it in a court of law, or any matter given in evidence which would impair its obligation in a court of equity. If she cannot be viewed as the purchaser of the property contracted to be invested for her use, she is certainly a fair and honest creditor from the time of executing the contract, if not from the time of the proposed settlement in August preceding, and after the engagement of marriage was made. If however she was a creditor on the 19th of December,

Thompson had a right to prefer her in preference to any other creditor, to the extent of his whole property whenever he could realize or reduce it to possession. The mere priority of plaintiffs' debt, in point of time, could not affect such preference from being effectual, nor could the previous authority to Mr. Fisher to contract the debt, affect the inchoate rights of Mrs. Thompson by the engagement and proposed settlement in the summer of 1825, which you may fairly infer from the agreement was in a course of execution, by Thompson having begun to build on the lot, of which Mr. Stockton was to stand seised in trust, before the date of the articles. If the settlement had taken Thompson's whole estate, and the certain consequences of its execution, or the intention of the parties had been to exclude the plaintiff from the payment of his debt under cover of the agreement, we would give him relief on the equity side of the court, but the present state of things has not resulted from the effect of the agreement, or the intention of the parties, unexpected losses alone have led to it, the consequences of which are these. The plaintiffs' debt was 63,000 dollars, of which there is now due of principal and interest 12,000 dollars; the debt of Mrs. Thompson estimating the house and furniture at 18,000 dollars was 58,000, of which there is now due 35,000 dollars if Morris's debt is not good, or if good, 30,500 with interest from December, 1825. Though this inequality of loss would be of no importance at law, it would be a powerful circumstance in equity, on an application by the plaintiff for relief, and the present case would be very different if the whole 40,000 dollars had been invested. This view of the merits of the case suffices for the decision of the points directly at issue, without adverting to others which have been made as to contracts for settlements made after marriage; the nature of the issue required us to so view the case. It has been urged by the plaintiffs' counsel, that there has been no delivery of the contract in the present case, but the evidence is sufficient in law to prove it, the building and furnishing the house tend strongly to prove it satisfactorily; the contract is also said to have been abandoned, this is not to be presumed, and we think the facts in evidence do not amount to proof of abandonment by Mrs. Thompson, or any acts done by her which could impair her rights. The omission of the trustee to enforce the payment of the money, and to record the deed, is no waiver by her, and any acts done by him inconsistent with the agreement, would not impair the legal validity of her rights; the acts of a parent are never so construed, unless clearly intended to be so; the law as to these objections is well settled in Carver v. Astor, 4 Pet. [29 U. S.] 28, 82, 93–99.

We have been requested to charge you, that in point of law the covenant on the part of Mr. Richard Stockton to stand seised to uses, operated as an immediate conveyance to his daughter before marriage, and that by the marriage, Thompson became the owner of the furniture in his own right, and had the exclusive use of the house and lot unincumbered with the trusts of the agreement. But inasmuch as by the covenant contained in that agreement, Mr. Stockton was not to stand seised to the use of his daughter till after marriage, the court instruct you as matter of law, that the marriage articles do not operate by the statute of uses (27 Hen. VIII.), to pass the legal estate to the lot, or any other property referred to them to Mrs. Thompson. That it remained in Mr. Richard Stockton during his lifetime, devolved by his death on his heir at law, Captain Stockton, and now remains in him on a trust executory, it never was and is not now one executed by that statute.

We have also been requested to charge you on three other points of law: (1) That the expenditure of 5,000 dollars, in furnishing the house is, per se, fraudulent on creditors. We think not. Furniture is a part of the marriage contract, to be provided by Thompson as he should think fit. He had a reasonable discretion which he might exercise according to their station and associations in life, proportioned to the kind of house and extent of income. The trustee could not at law, or the wife in equity, compel Thompson to furnish it extravagantly, or at useless or wanton expense; if he had done it voluntarily, it would not be within the true spirit and meaning of the marriage articles, and might be deemed a legal fraud on creditors as to the excess. But before we could say that it is a fraud in law, to expend 5000 dollars in furnishing a house costing 13,000, and the establishment to be supported by the income of 40,000 dollars invested, we must be satisfied that it is extravagant and unwarranted at the first blush, and to an extent indicating some fraudulent or other motive, unconnected with the fair execution of the contract. Not being so satisfied, or that there has been a clear abuse of the discretion confided to Mr. Thompson by the contract, we cannot charge you as requested. (2) That the delivery of the notes to Captain Stockton in 1829 was a fraud per se. We instruct you that this was no fraud, if it was done in order to comply in part with the agreement; if it was colourable, made with the intention of covering and concealing so much, under pretence of the marriage contract for Thompson's use, and so received by the trustee, it was legally fraudulent as to creditors; but though delivered with such intention by Thompson, if not so accepted by Captain Stockton, then he might apply them to the trust fund, and was bound to do so. Being done to carry the agreement of December 1825 into execution, its having been done on the eve of the judgment confessed in New Jersey, makes no difference; had it been to make a new settlement after mar-

riage, if it was in consideration of a portion or property, it would not have been fraudulent per se. The time which intervenes between making provision for a wife, and the contracting the debt or obtaining a judgment against the husband, is not a matter which makes it per se a fraud, it may or may not be suspicious, and connected with other circumstances deemed evidence of it. [Wheaton v. Sexton] 4 Wheat. [17 U. S.] 506, 507; [Sexton v. Wheaton] 8 Wheat. [21 U. S.] 238; 3 Johns. Ch. 485, 494. (3) That the marriage agreement is void because not recorded within the time required by the law of New Jersey for recording deeds. The covenant to stand seised to the uses declared, would come within this law if the uses were executed by the statute, so as to make it an actual conveyance or deed passing the legal estate; but being executory, it is only a covenant giving an equitable estate to those for whom the trust was created and continues, and not a deed. But considering it as a deed, the want of recording does not make it void between the parties, though it would become void as to the creditors (perhaps), and purchasers from Richard Stockton without notice, but the omission to record this agreement is no fraud on the plaintiffs, and cannot affect them. Not being void between the parties, it gives Thompson no other estate or interest but such as arises from the trust; he can have none incompatible with it, our instruction therefore is that the marriage contract is not void for want of being recorded in time. The possession and occupation of the house by Thompson is consistent with and a part of the agreement, his use of·it and the furniture is a necessary consequence of the marriage, and if the contract is valid, such possession is no evidence or badge of fraud. You will apply these principles of law to the evidence and find according to your opinion of the facts.

The jury found for defendant; judgment was rendered on the verdict and affirmed by the supreme court on a writ of error. 7 Pet. [32 U. S.] 348.